COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Huff, Judges Beales and AtLee
Argued at Richmond, Virginia

UNPUBLISHED

RONALD EDWARD JOHNSON, JR.

MEMORANDUM OPINION[*] BY
v.      Record No. 1138-14-2                    JUDGE RICHARD Y. ATLEE, JR.
                                                JULY 7, 2015

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

Mark S. Gardner (Gardner & Haney, P.C., on briefs), for appellant.

David M. Uberman, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


A judge convicted Ronald Edward Johnson, Jr. of three counts of felony failure to appear.

Johnson alleges that conviction of more than one count violated the Double Jeopardy clauses of

the United States Constitution and the Virginia Constitution. We disagree and affirm.

I. BACKGROUND

On appeal of a criminal conviction, we view the facts in the light most favorable to the

Commonwealth, and draw all reasonable inferences flowing from those facts. Derr v.

Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991). So viewed, the facts are as

follows.

Johnson was served with three felony warrants charging forgery, uttering, and attempting

to obtain money by false pretenses, and was required to appear for preliminary hearing on those

charges in the Fredericksburg General District Court on June 20, 2013. He did not do so. In

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

2014 a Fredericksburg grand jury returned three felony indictments charging Johnson with failure to appear in the general district court on June 20, 2013, in violation of Code § 19.2-128(B). The three indictments alleged, respectively, that he failed to appear "as required on the felony charge of attempt to obtain money by false pretenses," "as required on the felony charge of forgery," and "as required on the felony charge of uttering."

Johnson moved to dismiss two of the three counts, arguing that conviction of more than one count violated the Double Jeopardy clauses of the United States Constitution and the Virginia Constitution. The circuit court denied his motion. Ultimately, Johnson entered conditional guilty pleas to the three charges and noted his appeal to this Court.

## II.  ANALYSIS

### A.  Standard of Review

"We review a trial court's application of a statute *de novo*." Bowling v. Commonwealth, 51 Va. App. 102, 108, 654 S.E.2d 354, 357 (2007). Similarly, "[w]e review de novo claims that multiple punishments have been imposed for the same offense in violation of the double jeopardy clause." Lawlor v. Commonwealth, 285 Va. 187, 227, 738 S.E.2d 847, 870 (2013).

### B.  Rules 5A:18 and 2:201

Before addressing Code § 19.2-128 and double jeopardy, we resolve several procedural issues. In his brief, for the first time on appeal, Johnson attempts to buttress his double jeopardy argument in part by stressing that he endorsed only one written promise to appear[1] when he

---

[1] Johnson attaches to his brief and labels "Addendum, Exhibit 1" a copy of the front and back of a district court recognizance form (Form DC-330). The form appears to be connected to Johnson's three underlying felonies, and appears to show the signatures of Johnson, his bail bondsman, and the magistrate, confirming that Johnson was released from incarceration and admitted to bail with a secured bond of $3,000. In the interest of simplicity, we use the term "bond paperwork" to describe the recognizance form throughout this opinion, though the more accurate phrase is "purported bond paperwork," since such document was never authenticated or judicially noticed in the circuit court.

posted bail for the three underlying felony charges in the general district court. We agree with the Commonwealth that Rule 5A:18 forecloses consideration of this argument.

Rule 5A:18 reads, in relevant part:

> No ruling of the trial court or the Virginia Workers' Compensation Commission will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice.

We do not consider arguments raised for the first time on appeal. McLean v. Commonwealth, 30 Va. App. 322, 329, 516 S.E.2d 717, 720 (1999). This remains true even if an appellant raised related arguments in the trial court. See Edwards v. Commonwealth, 41 Va. App. 752, 760, 589 S.E.2d 444, 448 (2003) (en banc) ("Making one specific argument on an issue does not preserve a separate legal point on the same issue for review."). By failing to make an argument in the circuit court based on the bond paperwork, Johnson waived any such argument in this Court.

Johnson urges us to use the ends of justice exception in Rule 5A:18 to consider the bond paperwork and his arguments surrounding it. To use the ends of justice exception in this manner would be to misapply the exception, and we decline to do so. We employ the ends of justice exception to consider an inadequately preserved objection, not to consider physical evidence which an appellant never introduced in the trial court.

Citing Rule 2:201, Johnson asks us to take judicial notice of the bond paperwork. Rule 2:201 states, in relevant part:

> (a) *Notice*. A court may take judicial notice of a factual matter not subject to reasonable dispute in that it is either (1) common knowledge or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.
> (b) *Time of taking notice*. Judicial notice may be taken at any stage of the proceeding.

The broad wording of subsection (b) permits us to take judicial notice of "a factual matter." But when that matter is a document (other than this Court's own records), our authority is

circumscribed by what the trial court relied upon when *it* took judicial notice of such document. See Commonwealth v. Woodward, 249 Va. 21, 23, 452 S.E.2d 656, 657 (1995) (striking a 44-page addendum attached by the Commonwealth to its brief in a Workers' Compensation Act appeal, and explaining that "an appellate court may not take judicial notice of such documents when they were not relied upon before the court or commission below").  That the document purports to be a record of a lower court does not provide any additional weight to Johnson's judicial notice argument.  Plummer v. Commonwealth, 211 Va. 706, 707, 180 S.E.2d 519, 520 (1971) (per curiam) (agreeing that an appellate court may take judicial notice of its own records, but stating "we are without authority to take such notice of the records of the lower court").  The bond paperwork was not "relied upon before the court" below, so we will not take judicial notice of it now.[2]

## C.  Double Jeopardy

Johnson claims that his conviction of more than one count of failure to appear violated the Double Jeopardy clauses of the United States Constitution and the Virginia Constitution. "The double jeopardy clauses of the United States and Virginia Constitutions provide that no person shall be put twice in jeopardy for the same offense."  Martin v. Commonwealth, 221 Va. 720, 722, 273 S.E.2d 778, 780 (1981).  The prohibition against double jeopardy "embodies three guarantees:  '(1) "It protects against a second prosecution for the same offense after acquittal. [(2)] It protects against a second prosecution for the same offense after conviction.  [(3)] And it protects against multiple punishments for the same offense."'"  Blythe v. Commonwealth, 222

---

[2] Rule 2:201(a) also limits judicial notice in several other ways that preclude the Rule's applicability here.  The bond paperwork Johnson supplies is not "common knowledge," and is incapable of "accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  Johnson proposes no procedure by which this Court could determine the accuracy of his addendum.  Per Rule 5A:25(h), we may consider documents included in the record but left out of the appendix.  See Cabral v. Cabral, 62 Va. App. 600, 604 n.1, 751 S.E.2d 4, 7 n.1 (2013).  Here, the bond paperwork appears in neither the appendix nor the record.

Va. 722, 725, 284 S.E.2d 796, 797 (1981) (quoting Illinois v. Vitale, 447 U.S. 410, 415 (1980) (footnotes omitted) (quoting North Carolina v. Pearce, 395 U.S. 711, 717 (1969))).  Here we address the third of these guarantees, which bars multiple punishments for the same offense.

Though multiple punishments for the same offense are constitutionally prohibited, "'conduct may constitute more than one violation of a single criminal proscription.'"  Sandoval v. Commonwealth, 64 Va. App. 398, 417, 768 S.E.2d 709, 718-19 (2015) (quoting Jordan v. Commonwealth, 2 Va. App. 590, 593, 347 S.E.2d 152, 154 (1986)).  As this Court stated in Jordan, it is the legislature that decides how crime is punished:

> The legislature in its discretion may determine the appropriate "unit of prosecution" and set the penalty for separate violations . . . .  Where the legislature has authorized cumulative punishments, regardless of whether the offenses are the "same," the prosecutor may seek and the trial court may impose cumulative punishments in a single trial.

Jordan, 2 Va. App. at 594, 347 S.E.2d at 154 (citations omitted) (footnote omitted).  For the reasons that follow, we hold that the legislature intended the unit of prosecution in Code § 19.2-128(B) to correspond to the number of underlying offenses for which a defendant is obligated to appear.

### 1.  Code § 19.2-128(B)

"'The multiple punishments prohibition . . . remains from start to finish wholly dependent on statutory interpretation.'"  Sandoval, 64 Va. App. at 417, 768 S.E.2d at 718-19 (quoting De'Armond v. Commonwealth, 51 Va. App. 26, 33, 654 S.E.2d 317, 320 (2007)).  Code § 19.2-128(B) states:  "Any person (i) charged with a felony offense or (ii) convicted of a felony offense and execution of sentence is suspended pursuant to § 19.2-319 who willfully fails to appear before any court as required shall be guilty of a Class 6 felony."  Johnson failed to appear for his preliminary hearing on three pending felonies, so subsection (i) addresses his conduct.

"The Virginia Supreme Court has long held that '[w]hen analyzing a statute, we must assume that "the legislature chose, with care, the words it used . . . and we are bound by those words as we interpret the statute."'" Hodges v. Dep't of Soc. Servs., Div. of Child Support Enforcement, 45 Va. App. 118, 126, 609 S.E.2d 61, 64-65 (2005) (quoting City of Va. Beach v. ESG Enters., 243 Va. 149, 153, 413 S.E.2d 642, 644 (1992) (quoting Barr v. Town and Country Props., Inc., 240 Va. 292, 295, 396 S.E.2d 672, 674 (1990))).

We must presume that the legislature's decision to include or leave out even a single letter or word in a statute is intentional and meaningful. See, e.g., Tiller v. Commonwealth, 193 Va. 418, 422-23, 69 S.E.2d 441, 443-44 (1952) (analyzing the legislative decision to use the phrase "dual wheels" instead of "dual wheel" in § 46-334 of the Code); Posey v. Commonwealth, 123 Va. 551, 554-55, 96 S.E. 771, 772 (1918) (interpreting a taxation statute and the legislature's use of the word "rates," as opposed to "rate," and noting that inclusion of a plural word instead of a singular word "could not have been an 'inadvertence of the draftsman,' as contended by counsel").

Here, the legislature chose to criminalize the failure to appear of anyone charged "with a felony offense," rather than, for example, "with any felony offense" or "with felony offenses." In Mason v. Commonwealth, 49 Va. App. 39, 636 S.E.2d 480 (2006), the defendant was convicted of multiple counts of possession of child pornography with the intent to distribute. She argued that the trial court erred in finding the unit of prosecution corresponded to the number of individual images possessed. In affirming her convictions, this Court discussed the importance of the legislature's use of the word "a" in determining the intended unit of prosecution:

> [b]y using the word "a" followed by a succession of singular nouns
> in the definition of "sexually explicit visual material" in Code
> § 18.2-374.1(A), the Virginia legislature has demonstrated its clear
> intent that possession of a single photograph could constitute an

- 6 -

offense under Code § 18.2-374.1 and that multiple punishments would result from multiple violations of the statute. Accordingly, we conclude that the permissible unit of prosecution for possession of child pornography under Code § 18.2-374.1(B)(4) corresponds to the number of individual items of sexually explicit visual material.

Id. at 48, 636 S.E.2d at 484 (footnote omitted). The reasoning in Mason is applicable in this case. The legislature's use of the words "a felony offense" evinced an intent that the unit of prosecution for failure to appear corresponds to the number of individual felony offenses for which a defendant is obligated to appear.

Johnson argues that Code § 19.2-128 must be strictly construed against the Commonwealth because of the doctrine of lenity. Lenity is a rule of statutory construction requiring that a court resolve ambiguities in penal statutes in the defendant's favor. See Jones v. Commonwealth, 64 Va. App. 361, 367 n.2, 768 S.E.2d 270, 273 n.2 (2015). Barring statutory ambiguity, we are "bound by the plain meaning of unambiguous statutory language and 'may not assign a construction that amounts to holding that the General Assembly did not mean what it actually has stated.'" Gunn v. Commonwealth, 272 Va. 580, 587, 637 S.E.2d 324, 327 (2006) (quoting Williams v. Commonwealth, 265 Va. 268, 271, 576 S.E.2d 468, 470 (2003)); see also De'Armond, 51 Va. App. at 36, 654 S.E.2d at 322 (noting that appellant's "proffered statutory construction . . . does not clarify ambiguous statutory language, but rather rewrites unambiguous statutory language"). We cannot create ambiguity by straining to interpret a statute whose understanding requires no such exertion. Since we find no ambiguity to resolve within Code § 19.2-128, lenity has no place in our analysis.

### 2. Cases From Other States

Neither this Court nor the Supreme Court has directly addressed the question presented. Johnson refers us to cases from several other states, as does the Commonwealth. Johnson urges us to adopt the reasoning of the First District Court of Appeal of Florida, as enunciated in McGee

v. State, 438 So.2d 127 (Fla. Dist. Ct. App. 1983), where that court held: "The gravamen of the offense is the failure to appear at the time and place specified, not how many offenses or cases are pending and scheduled for disposition on that particular occasion." Id. at 131.

Johnson also cites Lennon v. United States, 736 A.2d 208 (D.C. 1999), from the District of Columbia Court of Appeals. The court in Lennon framed the issue as "whether the legislative intent behind [the failure to appear statute] is to punish the single act of failing to appear for a unitary court proceeding or the two separate acts of not appearing for trial on each underlying charge." Id. at 210. That court held that a defendant who is released on a single notice to appear and fails to appear for a single hearing may be convicted of only one count of failure to appear, even if he was to have appeared to face multiple underlying charges. Id. at 212.[3]

The Commonwealth urges us to look to Connecticut and Wisconsin. In State v. Garvin, 682 A.2d 562 (Conn. App. Ct. 1996), a case decided by the Appellate Court of Connecticut,[4] the defendant failed to appear for sentencing on multiple charges, and was ultimately convicted of multiple counts of failing to appear. Id. at 564-65. Garvin held that multiple convictions were appropriate, as each charge of failure to appear related to a separate underlying felony:

> Failure to appear pursuant to the statute requires proof of an underlying crime . . . . Had the legislature intended to punish only the act of failing to appear, it would not have added the element of "while charged with the commission of a felony." Each failure to appear relates to the underlying charge for which the individual failed to appear.

\* \* \* \* \* \* \*

---

[3] This holding was based in part on the defendant's signature of a single notice to appear. For the reasons explained in Part II.B., we do not consider Johnson's single notice argument.

[4] The Appellate Court of Connecticut is an intermediate appellate court. The case cited by the Commonwealth was subsequently appealed to the court of last resort in that state, the Supreme Court of Connecticut, which affirmed the Appellate Court of Connecticut, "on somewhat different grounds." See State v. Garvin, 699 A.2d 921, 924 (Conn. 1997).

> In order for double jeopardy to exist there must be a dual punishment of the same offense arising out of the same act. Here, there was one act, a failure to appear on a given day, but two offenses because each charge of failure to appear involved an element that the other did not, namely, being charged with the commission of separate felonies.

Id. at 566-67.

Finally, the Commonwealth cites State v. Eaglefeathers, 762 N.W.2d 690 (Wis. Ct. App. 2008).[5] Eaglefeathers, from the Court of Appeals of Wisconsin, addressed charges of "bail jumping" and found that "'[e]ach count would require proof of facts for conviction which the other two counts would not require' giving rise 'to an individual factual inquiry' for each count of bail jumping." Id. at 695 (quoting State v. Richter, 525 N.W.2d 168, 170 (Wis. Ct. App. 1994)). Eaglefeathers also observed that the defendant "fails to acknowledge that his conduct resulted in two separate wrongs, preventing the court from proceeding with preliminary hearings in two separate cases. Under such circumstances, multiple punishments are not inappropriate." Id. at 696.

While we acknowledge that our sister states are divided on this question, we agree with the logic of the Appellate Court of Connecticut and the Court of Appeals of Wisconsin. The Commonwealth in the case at bar was required to prove notice to Johnson as to each instance of failure to appear. The Commonwealth was also required to prove that, as to each failure to appear charge, Johnson had been charged with an underlying felony. The Court of Appeals of Wisconsin is correct to point out the "wrongs" that accrue when one fails to appear to answer for multiple charges. Johnson's failure to appear hampered the Commonwealth's ability to proceed

---

[5] This case, too, comes from an intermediate court of appeal, although Eaglefeathers, unlike Garvin, was not appealed further.

on multiple charges, making multiple punishments for such failures to appear all the more appropriate.[6]

### 3. Virginia Cases Addressing Multiple Punishments

Various Virginia cases address multiple punishments for single acts. Johnson cites two of these cases in support of his position, but we find his examples distinguishable from his own case.

In Acey v. Commonwealth, 29 Va. App. 240, 511 S.E.2d 429 (1999), this Court held that a defendant who simultaneously possessed multiple firearms could only be convicted of one count of possession of a firearm by a convicted felon. This Court found the statute ambiguous in Acey. Id. at 249-50, 511 S.E.2d at 433. Here, we do not find § 19.2-128 of the Code ambiguous. The legislature's use of the phrase "a felony" in § 19.2-128 of the Code leads us to conclude that multiple punishments are permitted. See Part II.C.1. By contrast, the statutory language at issue in Acey, from Code § 18.2-308.2(A), addressed the phrase "any firearm" and read in relevant part: "It shall be unlawful for (i) any person who has been convicted of a felony . . . to knowingly and intentionally possess or transport *any* firearm . . . ." Acey, 29 Va. App. at 249 n.3, 511 S.E.2d at 433 n.3 (emphasis added).

Johnson also cites Lane v. Commonwealth, 51 Va. App. 565, 659 S.E.2d 553 (2008), for the proposition that one must possess multiple intents to be convicted of multiple counts of the same crime. In Lane, the defendant was charged with "three counts of possession with the intent

---

[6] Between the date of Johnson's preliminary hearing on the three underlying felonies (for which he failed to appear) and the date of his ultimate apprehension on the failure to appear charges, the Commonwealth's key witness (the victim) on the three initial underlying felony charges passed away. Because of the victim's death, the Commonwealth ultimately moved for entry of orders of *nolle prosequi* as to those three underlying felony charges. We note that, if we were to adopt Johnson's position now, he would incidentally profit from his initial failure to appear by escaping the possibility of conviction of the three underlying felonies in exchange for just one felony failure to appear.

to distribute a Schedule II controlled substance (one count for liquid oxycodone, one count for Endocet tablets, which contained oxycodone, and one count for oxycodone tablets)." Id. at 568, 659 S.E.2d at 554. The defendant moved to dismiss two of the three indictments, as Johnson does here, alleging a double jeopardy violation. This Court reversed, holding that the Commonwealth had not proven that "appellant possessed different demonstrated intents sufficient to support three separate charges of possession with the intent to distribute oxycodone." Id. at 582, 659 S.E.2d at 561. Johnson argues that he, like the defendant in Lane, committed but one crime, with a single intent. We do not agree. Though Johnson failed to appear on a single date and at a single location, he had three different obligations to appear, and faced three distinct criminal allegations, with different elements of proof. In failing to appear as to each underlying felony, he prevented a hearing as to each of the three charges.

We are persuaded by other decisions of this Court and the Supreme Court upholding multiple punishments for single acts. In Jordan, this Court upheld the robbery convictions of a defendant who robbed multiple victims at gunpoint simultaneously. This Court highlighted the General Assembly's use of the singular word "person" and looked closely at the language of the robbery statute:

> The gravamen of the offense to be punished consists of "violence to *the person*" or "putting *a person* in fear . . . by the . . . presenting of firearms" during the commission of a robbery. The [robbery] statute refers to the victim in the singular and suggests that the General Assembly's primary purpose was the protection of an individual from violence and fear of harm during a robbery. Thus, the focus must be upon the actions directed toward *the person* robbed.

Jordan, 2 Va. App. at 595, 347 S.E.2d at 155; see also Kelsoe v. Commonwealth, 226 Va. 197, 199, 308 S.E.2d 104, 104 (1983) (per curiam) (upholding multiple brandishing convictions for defendant who pointed a gun at three men simultaneously, and holding "when the defendant frightened the three men by pointing his weapon, he committed three separate crimes"); Shears

v. Commonwealth, 23 Va. App. 394, 401, 477 S.E.2d 309, 312 (1996) (affirming two convictions of possession of cocaine with the intent to distribute, when one bag of cocaine was found in defendant's pocket, and another on the floor where he had been standing, and noting "[t]he gravamen of the offense is clearly possession of the specified drug with the requisite intent"). Like the defendants in Jordan, Kelsoe, and Shears, Johnson's single act rightly resulted in multiple charges, as the statute criminalizes not simply a failure to appear, but a failure to appear as to each underlying charge for which Johnson faced preliminary hearing.

Finally, in probation violation proceedings pursuant to Code § 19.2-306, probationers with multiple suspended sentences face revocation of some or all of such sentences. A court may order multiple sentences into execution even though the probationer committed only one violation, for instance testing positive for drugs, committing a new crime, or absconding from supervision. In this way, a single act with a single intent can simultaneously trigger the re-imposition of previously suspended sentences in multiple cases. When a probationer violates his probation, a court does not simply punish the violation, it punishes the violation *as to each underlying conviction*. In each case for which he is on probation, a probationer has a unique obligation to the court to be of good behavior and to follow the rules of his probation officer. A probationer owes such an obligation to the court as to each individual charge for which he is being supervised, just as in our case, Johnson owed an obligation to the general district court to appear and answer for each pending felony charge.

## III. CONCLUSION

The trial court did not err in finding Johnson guilty of three counts of felony failure to appear. A single act of failure to appear may result in multiple convictions for failure to appear, when, as here, each such count is based on a distinct underlying felony. Multiple convictions in this case did not violate the Double Jeopardy clauses of the United States Constitution or the

Virginia Constitution.  Code § 19.2-128(B) is unambiguous, so Johnson does not receive the benefit of the rule of lenity.  We affirm the judgment of the trial court.

Affirmed.